UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TYRON WASHINGTON, JR.,

        Plaintiff,

v.                                              Case No. 25-cv-0830-bhl

ARAMARK,
ARAMARK GLOBAL HEADQUARTERS,
DAVID ZOERNER,
LT. SCHROEDER,
SERGEANT SIMPSON,
CAPTAIN BERAMIS,
SERGEANT MAY,
KITCHEN SUPERVISOR SHANNON,
KITCHEN STAFF PERSON KEN, and
KENOSHA COUNTY,

        Defendants.

---

## SCREENING ORDER

---

      Plaintiff Tiron Washinton, Jr., who is currently incarcerated at the Kenosha County Jail and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Washington's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

      Washinton has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Washinton has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an

initial partial filing fee of $95.02. Washinton's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

Case 2:25-cv-00830-BHL  Filed 08/22/25  Page 2 of 8  Document 8

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Washington is a pretrial detainee currently housed at the Kenosha County Jail. According to Washington, on May 1, 2025, Aramark became the food vendor at the jail, with Aramark employees preparing all meals for the inmates. Washington asserts that he practices Judaism and that as part of his religious practices, he adheres to kosher dietary laws, which, according to Washington, dictate what foods he can eat, how his food must be prepared, and how his food should be served. Washington asserts that for about a month, from May 1 through June 4, 2025, he was consistently served non-kosher food. He states that, initially, he was served only bread and peanut butter with no fresh fruit or juice for breakfast. He also states that for lunch and dinner he was served beans and rice with no meat for protein. He also asserts that he often received the same food as the other inmates. Finally, he notes that the different foods on his tray often touched one another, which prevented him from praying over each food separately as his religious beliefs require. Washington explains that, as he began to file grievances about his concerns with his food, the quality and quantity of the food he was served deteriorated to the point that he was being served only four slices of bread with non-kosher peanut butter.

According to Washington, Sergeant Simpson, who seems to have reviewed Washington's grievances, met with others to discuss Washington's complaints, but nothing changed. Washington states that his concerns over his food caused him to go on numerous hunger strikes. He feared that kitchen staff would retaliate against him in other ways such as spitting in his food, and he doubted that the food served to him was prepared properly. Washington explains that on May 29, 2025, Sergeant Simpson allegedly acknowledged that Washington had a legitimate claim and asked Washington to stop his hunger strike, promising him that the food would improve.

3

Washington states that he now receives pre-packaged kosher meals with a piece of fruit and slices of bread. He states that he could have been provided this food all along.

Washington explains that as a result of having to periodically stop eating or eat food that conflicted with his religious beliefs, he suffered mentally and physically. He states that he was frequently hungry, very stressed, and was even diagnosed with high blood pressure for the first time in his life.

## THE COURT'S ANALYSIS

Under the First Amendment, prison officials may not "personally and unjustifiably place[] a substantial burden on [a prisoner's] religious practices. A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) (cleaned up). Based on this standard, Washington states a First Amendment claim against Sergeant Simpson and Kitchen Supervisor Shannon based on allegations that despite Washington telling them numerous times that his religious beliefs required that he eat kosher meals, they repeatedly served him non-kosher meals for a month. For the same reasons, Washington may also proceed on a claim against Sergeant Simpson and Kitchen Supervisor Shannon under the Religious Land Use and Institutionalized Persons Act (RLUIPA), which prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution," unless "that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).

Washington also states a Fourteenth Amendment conditions-of-confinement claim against Sergeant Simpson and Kitchen Supervisor Shannon based on allegations that, for at least a short period of time, they served him only bread and peanut butter. Because Washington was a pretrial detainee at the relevant time, the Constitution required that he be confined in objectively

4

reasonable conditions, and, at least at this stage, the Court can reasonably infer that the amount and quality of food that Washington was served was not objectively reasonable. *See Hardeman v. Curran*, 933 F.3d 816, 822-823 (7th Cir. 2019).

Finally, Washington states a First Amendment retaliation claim against Sergeant Simpson and Kitchen Supervisor Shannon based on allegations that the quality and quantity of food he was served worsened in response to the many grievances he filed. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (holding that, to plead a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action."). Washington may also proceed on a claim for indemnity under Wisconsin Stat. §895.46 against Kenosha County, which is Sergeant Simpson's employer.

Washington does not, however, state claims against Aramark, or Aramark Global Headquarters. There is no respondeat superior liability under §1983, and the mere fact that these companies or entities were responsible for providing food to inmates at the jail does not mean that they are liable for the misdeeds of their employees. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (holding that respondeat superior liability does not apply to private corporations under §1983).

Nor does Washington state a claim against David Zoerner, Lt. Schroeder, Captain Beramis, Sergeant May, or Aramark Staff Person Ken. Washington vaguely asserts that these individuals were aware of his complaints, but the mere fact that they knew Washington was complaining about his food does not mean that they were responsible for addressing his concerns. Although not entirely clear, it appears that Washington interacted primarily with Sergeant Simpson—he alleges no direct communications with any other individual, stating only that his conversations with

Sergeant Simpson were captured on other officers' body-worn cameras. As the Seventh Circuit has repeatedly emphasized, "there is no general duty of rescue" under §1983 and just because a "public employee [] knows (or should know) about a wrong" does not mean he "must do something to fix it." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). After all, "[b]ureacracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Id.* at 595.

Similarly, supervisory staff are entitled to delegate the provision of inmate care to subordinates, and absent allegations that a supervisor turned a blind eye to or facilitated the alleged misconduct, a supervisor will not be liable for a subordinate's misdeeds. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Washington asserts that Sergeant Simpson took several steps to address his concerns, although the issue was not resolved immediately. Based on these allegations, the Court cannot reasonably infer from Washington's conclusory and undeveloped allegation that everyone was aware that Washington was complaining about his food that supervisory staff directed or consented to any alleged misconduct. Because Washington includes no factual allegations regarding supervisory staff's involvement, he fails to raise his right to relief above the speculative level and therefore fails to state a claim against the supervisors. *Twombly*, 550 U.S. at 555.

**IT IS THEREFORE ORDERED** that Washington's motion for leave to proceed *in forma pauperis* (Dkt. No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that Washington fails to state a claim against Aramark, Aramark Global Headquarters, David Zoerner, Lt. Schroeder, Captain Beramis, Sergeant May, and Aramark Staff Person Ken, so the clerk's office is directed to remove them from this action.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Sergeant Simpson and Kitchen Supervisor Shannon pursuant to Federal Rule of Civil Procedure 4. Washington is advised that Congress requires the U.S. Marshals

Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Sergeant Simpson and Kitchen Supervisor Shannon shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Washington is located.

**IT IS FURTHER ORDERED** that the agency having custody of Washington shall collect from his institution trust account the $254.98 balance of the filing fee by collecting monthly payments from Washington's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Washington is transferred to another institution, the transferring institution shall forward a copy of this Order along with Washington's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge

7

Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Washington is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on August 22, 2025.

>s/ *Brett H. Ludwig*
>BRETT H. LUDWIG
>United States District Judge